UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,  :
 :
                  Plaintiff,  :
 :
                     v.  :   17-cv-00430 (NGG-LB)
 :
MICHAEL L. COHEN and VANJA BAROS,  :   Date of Service:  August 18, 2017
 :
              Defendants.  :
 :

---------------------------------------------------------------x


# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# VANJA BAROS'S MOTION TO DISMISS THE AMENDED COMPLAINT

Mark S. Cohen
Jonathan S. Abernethy
S. Gale Dick
COHEN & GRESSER LLP
800 Third Avenue
New York, NY  10022
Phone:  (212) 957-7600
Fax:  (212) 957-4514

*Attorneys for Vanja Baros*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ............................................................................................................... 2

I.  The SEC Concedes It Has No Viable Case for Fines, and Its Statute of Limitations
    Arguments Regarding the Other Relief It Seeks Are Without Merit................................ 2

    A.  The Court Can and Should Resolve Baros's Statute of Limitations Motion
        Now................................................................................................................ 3

    B.  There Is No Separate Accrual Period for Disgorgement. ...................................... 5

II. The SEC Has Failed to Establish a Basis for Subjecting Baros to Personal
    Jurisdiction in the U.S........................................................................................... 7

    A.  The SEC Has Not Adequately Alleged a Single Suit-Related Contact
        Between Baros and the U.S., and It Cannot Fill the Gap by Relying on Och-
        Ziff's Connection to the Forum. ......................................................................... 7

    B.  The SEC Fails to Plead a Basis for Jurisdiction as to Its Anti-Bribery
        Claims. ........................................................................................................... 11

    C.  The SEC Fails to Plead a Basis for Jurisdiction as to Its Accounting and
        Controls Claims. ............................................................................................. 13

    D.  The SEC Fails to Plead a Basis for Jurisdiction as to the IAA Claims................. 15

    E.  The Exercise of Personal Jurisdiction Would Be Unreasonable. ........................ 16

III. The SEC Overreached In Charging Baros with Anti-Bribery Claims, and Those
     Claims Should Be Dismissed................................................................................. 17

    A.  The SEC's Arguments that Baros Was an Agent and Employee Are
        Conclusory and Inconsistent with Settled Law.................................................. 17

        1.  Baros Was Not an Agent of Och-Ziff. ...................................................... 17

        2.  Baros Was Not an Employee of Och-Ziff.................................................. 21

        3.  Baros Is Not Subject to Aiding and Abetting Liability under the
            FCPA..................................................................................................... 22

    B.  The SEC's FCPA Claims Fail to Meet Basic Pleading Standards with
        Respect to the Margin Loan and the 2011 Stock Purchase................................. 23

        1.  The SEC Has Failed To Connect Baros to the Margin Loan..................... 23

2.    The SEC Fails to Plead that Baros Played a Role in the Alleged
       Bribery in Guinea...................................................................................... 24

IV.    Claims Six and Seven Should Be Dismissed.................................................... 25

CONCLUSION................................................................................................................ 25

TABLE OF AUTHORITIES

**Cases**

*Anderson v. Griswold Int'l, LLC,*
   No. 14 cv 2560 (EDL), 2014 WL 12694138 (N.D. Cal. Dec. 26, 2014)...................................9

*Arensdorf v. Everson,*
   No. 07 cv 2703, 2008 WL 2229745 (S.D. Tex. May 27, 2008) ...............................................9

*Asahi Metal Indus. Co. v. Superior Ct. of Calif.,*
   480 U.S. 102 (1987)...............................................................................................................10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)........................................................................................................23, 25

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...............................................................................................................23

*Bonnette v. California Health and Welfare Agency,*
   704 F.2d 1465 (9th Cir. 1983) ...............................................................................................20

*Bontkowski v. Smith,*
   305 F.3d 757 (7th Cir. 2002) ...................................................................................................5

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985).................................................................................................................8

*Burkina Wear, Inc. v. Campagnolo, S.R.L.,*
   No. 07 Civ. 3610, 2008 WL 1007634 (S.D.N.Y. Apr. 9, 2008)...............................................4

*Calder v. Jones,*
   465 U.S. 783 (1984)...........................................................................................................9, 16

*Caronia v. Philip Morris USA, Inc.,*
   No. 06-CV-224 CBA/SMG, 2010 WL 520558 (E.D.N.Y. Feb. 11, 2010),
   *aff'd,* 715 F.3d 417 (2d Cir. 2013) ..........................................................................................5

*Complaint of Kreta Shipping, S.A.,*
   No. 96CIV.1137(KMW)(AJP), 1998 WL 173167 (S.D.N.Y. Jan. 29, 1998) ...........................8

*Duncan v. Am. Int'l Grp., Inc.,*
   No. 01 Civ. 9269(AGS), 2002 WL 31873465 (S.D.N.Y. Dec. 23, 2002)...............................21

*Fletcher v. Atex, Inc.,*
   68 F.3d 1451 (2d Cir. 1995) ...................................................................................................21

*Fried v. LVI Servs., Inc.,*
   No. 10 CIV. 9308 JSR, 2011 WL 2119748 (S.D.N.Y. May 23, 2011) ...................................20

*Gabelli v. SEC*,
  568 U.S. 442 (2013).................................................................................................... 3, 6

*Grow Group, Inc. v. Jandernoa*,
  No. 94 cv 5679 (RPP), 1996 WL 31848 (S.D.N.Y., Jan. 26, 1996)........................................ 9

*In re Amaranth Natural Gas Commodities Litig.*,
  587 F. Supp. 2d 513 (S.D.N.Y. 2008) ................................................................................ 18

*In re AstraZeneca Sec. Litig.*,
  559 F. Supp. 2d 453 (S.D.N.Y. 2008) ................................................................................ 14

*In re Braskem S.A. Sec. Litig.*,
  No. 15 CIV. 5132 (PAE), 2017 WL 1216592 (S.D.N.Y. Mar. 30, 2017) ............................... 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig., Comm. Fut.*,
  No. 11 MDL 2262, 2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015)........................................... 18

*In re Parmalat Sec. Litig.*,
  376 F. Supp. 2d 449 (S.D.N.Y. 2005) ................................................................................ 16

*In re Platinum & Palladium Antitrust Litig.*,
  No. 1:14-CV-9391-GHW, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ............................ 15

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
  351 F. Supp. 2d 334 (D. Md. 2004)................................................................................... 15

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*,
  131 F. Supp. 2d 544 (S.D.N.Y. 2001) ................................................................................ 19

*Jones v. Bock*,
  549 U.S. 199 (2007)............................................................................................................ 3

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1980)............................................................................................................ 9

*Khatib v. Alliance Bankshares Corp.*,
  846 F. Supp. 2d 18 (D.D.C. 2012) ................................................................................ 18, 22

*Kokesh v. SEC*,
  137 S. Ct. 1635 (2017)........................................................................................................ 2

*Laydon v. Mizuho Bank, Ltd.*,
  No. 12 CIV. 3419 GBD, 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015)............................. 9, 12

*Licci v. Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013) ......................................................................................... 8, 11

*Maung Ng We v. Merrill Lynch & Co., Inc.*,
  No. 99 CIV. 9687(CSH), 2000 WL 1159835 (S.D.N.Y. Aug. 15, 2000)................................ 18

*Saini v. Motion Recruitment Partners, LLC*,
  2017 WL 1536276 (C.D. Cal. Mar. 6, 2017)........................................................................... 20

*SEC v. Apuzzo*,
  689 F.3d 204 (2d Cir. 2012) ................................................................................................... 23

*SEC v. Collyard*,
  No. 16-1405, 2017 WL 2803184 (8th Cir. June 29, 2017)........................................................ 6

*SEC v. First Jersey Sec., Inc.*,
  101 F.3d 1450 (2d Cir. 1996) ................................................................................................... 5

*SEC v. Fisher*,
  No. 07-CV-4483 (JBZ), 2008 WL 2062699 (N.D. Ill. May 13, 2008) ..................................... 4

*SEC v. Hopper*,
  No. Civ. A. H-04-1054, 2006 WL 778640 (S.D. Tex. Mar. 24, 2006) ..................................... 4

*SEC v. Radius Capital Corp.*,
  No. 2:11-cv-116-FtM-29DNF, 2013 WL 3716394 (M.D. Fla. July 15, 2013) ......................... 3

*SEC v. Sharef*,
  924 F. Supp. 2d 539 (S.D.N.Y. 2013) ............................................................................ passim

*SEC v. Straub*,
  921 F. Supp. 2d 244 (S.D.N.Y. 2013) ................................................................................ 3, 12

*SEC v. Straub*,
  No. 11 CIV. 9645 (RJS), 2016 WL 5793398 (S.D.N.Y. Sept. 30, 2016)............................... 2, 6

*SEC v. Straub*,
  No. 11 CIV. 9645 RJS, 2013 WL 4399042 (S.D.N.Y. Aug. 5, 2013).................................... 12

*SEC v. Wall Street Commc'ns, Inc.*,
  No. 8:09-cv-1046-T-30TGW, 2009 WL 2579310 (M.D. Fla. Aug. 19, 2009) ......................... 4

*SEC v. Wey*,
  No. 15-cv-7116 (PKC), 2017 WL 1157140 (S.D.N.Y. Mar. 27, 2017) ................................... 2

*Star Energy Corp. v. RSM Top-Audit*,
  No. 08 Civ. 00329(DC), 2008 WL 5110919 (S.D.N.Y. Nov. 26, 2008)................................. 18

*Stutts v. De Dietrich Grp.*,
  465 F. Supp. 2d 156 (E.D.N.Y. 2006) ................................................................................... 19

*Tcherepnin v. Knight*,
   389 U.S. 332 (1967)................................................................................................. 22

*Tottenham v. Trans World Gaming Corp.*,
   No. 00 Civ. 7697, 2002 WL 1967023 (S.D.N.Y. June 21, 2002)............................................... 5

*U.S. ex rel. Siegel v. Roche Diagnostics,*
   *Corp.*, 988 F. Supp. 2d 341 (E.D.N.Y. 2013) ......................................................................... 24

*United States v. Bestfoods*,
   524 U.S. 51 (1998)................................................................................................. 20

*United States v. Hoskins*,
   123 F. Supp. 3d 316 (D. Conn. 2015)........................................................................ 22

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014)..................................................................................... 8, 9, 12

*Waldman v. Palestine Liberation Org.,*
   835 F.3d 317 (2d Cir. 2016) ...................................................................... 11, 12, 15

*Williams v. Walsh*, 558 F.2d 667 (2d Cir. 1977)........................................................... 6

**Statutes**

15 U.S.C. § 78dd-1 .............................................................................................. 17

15 U.S.C. § 78m(b) .............................................................................................. 13

24 U.S.C. § 2462 .................................................................................................. 2

28 U.S.C. 2462 ................................................................................................. 2, 4

**Other Authorities**

Restatement (Third) Of Agency § 1.01 (2006) ………………………………...…………………………….20

Restatement (Third) Of Agency § 2.03 (2006) ………………………………...…………………………….19

## PRELIMINARY STATEMENT

In his motion to dismiss, Vanja Baros ("Baros") set forth multiple independent grounds for dismissal, including that the SEC's claims are time-barred, that this Court lacks personal jurisdiction over Baros, and that the FCPA claims against him fail to satisfy minimum pleading standards. In its opposition to Baros's motion, the SEC does nothing to resolve the fatal deficiencies in the Amended Complaint.

With respect to the statute of limitations, the SEC concedes that all of its claims seeking a fine against Baros are time-barred. Under the U.S. Supreme Court's ruling in *Kokesh*, claims seeking disgorgement are subject to the same statute of limitations as other penalties, and the SEC's claims for disgorgement against Baros are therefore time-barred as well. The SEC's arguments to the contrary – that (i) the Court should delay ruling on the statute of limitations issue; and that (ii) the SEC's "disgorgement claims" accrue at a different time than the substantive violation – are contradicted by every relevant authority (including those cited by the SEC itself) and defy common sense. *Kokesh* controls, and this Court can and should rule now that the SEC's claims seeking disgorgement are time-barred.

With respect to personal jurisdiction, the SEC simply repeats – and often embellishes – the allegations in the Amended Complaint. But all of the SEC's jurisdictional allegations are impermissibly conclusory, relate to the U.S. contacts of parties other than Baros, and/or draw only indirect and attenuated links between Baros's own actions and any impact inside the forum. None of them adequately alleges any suit-related action by Baros that took place inside the U.S., was purposefully directed at the U.S., or was expressly intended to cause harm within the U.S. Under well-settled law, this Court therefore lacks personal jurisdiction over Baros – a foreign national who was an employee of a non-U.S. subsidiary and was far removed temporally, geographically, and factually from the alleged FCPA scheme involving Och-Ziff.

With respect to its substantive FCPA claims, the SEC asks the Court to defer ruling on key issues regarding agency. But these issues are fully ripe and, if reached, would end the FCPA anti-bribery claims against Baros, because the Amended Complaint's conclusory allegations and formulaic recitals of elements of the FCPA do not meet basic pleading standards with respect to Baros and cannot be cured through discovery.

Simply put, Baros does not belong in this case, and the SEC should not be permitted to keep him in by arguing for delay or obscuring the fatal deficiencies in the Amended Complaint.

## ARGUMENT

### I.     The SEC Concedes It Has No Viable Case for Fines, and Its Statute of Limitations Arguments Regarding the Other Relief It Seeks Are Without Merit.

The SEC concedes that all of the alleged violations against Baros are time-barred to the extent the SEC seeks fines against him. *See* SEC Opposition to Baros's Motion to Dismiss ("SEC Mem.") at 16 n.8 ("Based on the current state of the record, the Commission is unaware of any violations that accrued within the limitations period that would give rise to a penalty claim, but reserves the right to conduct additional discovery on the subject.").[1] The SEC also concedes, as it must under *Kokesh v. SEC*, 137 S. Ct. 1635 (2017) , that the five-year statute of limitations under 28 U.S.C. § 2462 for claims seeking civil penalties also applies to claims seeking disgorgement. The net effect is that the SEC cannot seek financial penalties against Baros.[2]

---

[1] The SEC does not contest (and implicitly concedes) that the statute of limitations under 24 U.S.C. § 2462 continues to run and does not toll if a defendant is present in the U.S. during any period after the claims accrue. *SEC v. Straub*, No. 11 Civ. 9645 (RJS), 2016 WL 5793398 (S.D.N.Y. Sept. 30, 2016); *SEC v. Wey*, No. 15-cv-7116 (PKC), 2017 WL 1157140 (S.D.N.Y. Mar. 27, 2017). Because Baros was present within the U.S. during the five-year limitations period for each of the claims against him, *see* Memorandum in Support of Motion to Dismiss ("Baros Mem.") at 10-15, the statute was not tolled.

[2] For the reasons set forth in the Reply Memorandum of Law in Further Support of Defendant Michael L. Cohen's Motion To Dismiss the Amended Complaint, to which Baros joins as to all arguments applicable to both defendants, there are compelling reasons why injunctive relief should also be governed by a five-year limitations period. Baros also joins in Cohen's arguments that the SEC should not be allowed to seek an associational bar under IAA Section 203(f) because, among other things, the SEC did not include this in its Prayer for Relief.

Notwithstanding these concessions, the SEC argues – without any basis – that it is still entitled to seek disgorgement against Baros under the FCPA and IAA because (*i*) the issue of remedies should be decided after liability is determined, and (*ii*) claims seeking disgorgement are governed by a different accrual date than claims seeking fines. The Court should reject these arguments, which find no support in the statutory text or the case law.

**A.    The Court Can and Should Resolve Baros's Statute of Limitations Motion Now.**

The SEC first argues that a ruling on the statute of limitations issue is premature because Section 2462 applies only to remedies, including disgorgement, and the Court may only consider "what remedies are available and appropriate" after liability is determined. SEC Mem. at 3; *see id.* at 16, 23. The SEC is simply wrong. Courts regularly rule on statute of limitations issues at the pleading stage; indeed, in *Gabelli v. SEC*, 568 U.S. 442 (2013) – which addressed the accrual date for claims governed by Section 2462 – the U.S. Supreme Court ruled that the district court properly granted a motion to dismiss on statute of limitations grounds. Nowhere in its opinion did the Supreme Court even suggest that statute of limitations arguments are inappropriate for consideration on a motion to dismiss. To the contrary, the Supreme Court has expressly endorsed dismissal on statute of limitations grounds at the pleading stage: "If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

District courts have frequently dismissed SEC enforcement cases as untimely at the pleading stage. *See, e.g.*, *SEC v. Straub*, 921 F. Supp. 2d 244, 259 (S.D.N.Y. 2013) (stating that an FCPA complaint may be dismissed on statute of limitations grounds for failure to state a claim); *SEC v. Radius Capital Corp.*, No. 2:11-cv-116-FtM-29DNF, 2013 WL 3716394, at *2 (M.D. Fla. July 15, 2013) (granting motion to dismiss time-barred claims and emphasizing that

these issues involve questions of law "that would more appropriately be resolved before trial");
*SEC v. Fisher*, No. 07-CV-4483 (JBZ), 2008 WL 2062699, at *2-8 (N.D. Ill. May 13, 2008)
(dismissing SEC's claim seeking civil penalties based on misstatements made before accrual
date).

The SEC's suggestion that Section 2462, "[b]y its terms, . . . only applies to remedies,
and not the underlying substantive claims alleged in the complaint" is also flatly wrong.  SEC
Mem. at 3.  Section 2462 provides that "an action, suit, or proceeding" that seeks a "civil fine,
penalty, or forfeiture" must be commenced within five years after "the claim first accrued."  28
U.S.C. § 2462.  The meaning is clear:  when and to the extent the SEC seeks those remedies in
connection with a "claim" more than five years after the accrual date – as it does here – the claim
is time-barred.

The cases cited by the SEC for the proposition that Baros's statute of limitations motion
is premature are inapposite.  The only one of these cases that even addresses the statute of
limitations supports Baros's position here that dismissal is proper if it is clear at the pleading
stage that the claims are time-barred.  *SEC v. Wall Street Commc'ns, Inc.*, No. 8:09-cv-1046-T-
30TGW, 2009 WL 2579310, at *3 (M.D. Fla. Aug. 19, 2009) (stating that dismissal would be
appropriate "if it is apparent from the face of the complaint that the claim is time-barred," but
declining to dismiss because it was unclear from the allegations in the complaint whether the
SEC's claims were timely).  The SEC's remaining authorities only address challenges to the
legal viability of the relief requested.  *See SEC v. Hopper*, No. Civ. A. H-04-1054, 2006 WL
778640, at *16 (S.D. Tex. Mar. 24, 2006) (asserting insufficiency of SEC's allegations relating
to remedies); *Burkina Wear, Inc. v. Campagnolo, S.R.L.*, No. 07 Civ. 3610, 2008 WL 1007634,
at *3 (S.D.N.Y. Apr. 9, 2008) (seeking dismissal on the ground that the court lacked the

authority to grant the relief requested); *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002) (claiming that plaintiff was not entitled to relief sought).

The SEC asserts, again without basis, that a ruling on the statute of limitations must be made on "a full factual record" after liability has been decided, and "reserves the right" to conduct additional discovery in hopes of finding a non-stale claim against Baros.  SEC Mem. at 3, 16 n.8.  The Court should reject this out of hand.  The SEC has already investigated this case for more than six years, has interviewed numerous witnesses, and has obtained tens of millions of pages of documents.  The SEC cannot plausibly contend that it needs more discovery to conjure up a new statute of limitations accrual date.  *See, e.g.*, *Tottenham v. Trans World Gaming Corp.*, No. 00 Civ. 7697, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) (discovery may not be used as a "fishing expedition to discover additional instances of wrongdoing beyond those already alleged").[3]

In brief, the statute of limitations issue is ripe, and the Court should reach this issue now.

**B.      There Is No Separate Accrual Period for Disgorgement.**

The SEC also advances the novel argument that a "claim for disgorgement" accrues on its own schedule – when "the ill-gotten gain is actually received."  SEC Mem. at 21-22.  But there is no such thing as a free-standing claim for disgorgement.  *See e.g.*, *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1478-79 (2d Cir. 1996) ("Disgorgement is permissible relief for a . . . violation of the securities laws; but disgorgement is not a claim in itself.");  *cf. Caronia v. Philip Morris USA, Inc.*, No. 06-CV-224 CBA/SMG, 2010 WL 520558, at *4 (E.D.N.Y. Feb. 11, 2010), *aff'd*, 715 F.3d 417 (2d Cir. 2013) (rejecting argument that plaintiff's claim did not accrue until the remedy was available because "the cause of action is something distinct from the remedy or the relief

---

[3] By the SEC's logic, it can assert time-barred claims and then force defendants to litigate the matter to conclusion before raising the statute of limitations issue.  This result would be absurd, and the SEC offers no logic or legal authority to defend it.

sought") (quoting *Williams v. Walsh*, 558 F.2d 667, 671 (2d Cir. 1977)).  The SEC thus has the argument backwards.  If the underlying claim seeks disgorgement, and that claim is time barred, there is nothing to seek a remedy for.

The SEC has not cited, and counsel for Baros is unaware of, any case holding that a different accrual date applies to disgorgement than to fines or the underlying cause of action, and there is no basis for the Court to adopt such a rule here.  *Gabelli*, which the SEC relies on for the "standard rule" that "a claim accrues when the plaintiff has a complete and present cause of action," actually refutes the SEC's argument.  SEC Mem. at 21 (quoting *Gabelli,* 568 U.S. at 448 (citation omitted)).  In *Gabelli*, the Supreme Court held that SEC claims under the IAA that seek monetary penalties accrue when the fraudulent conduct occurs – *i.e.*, when the elements of the underlying cause of action are present.  568 U.S. at 447-48 (2013).  *See also SEC v. Collyard*, No. 16-1405, 2017 WL 2803184, at *1-2 (8th Cir. June 29, 2017) (holding that SEC action seeking disgorgement was untimely in light of *Kokesh*, and noting that the "claim 'accrued' under § 2462 when [the] allegedly unlawful conduct occurred."); *SEC v. Straub*, No. 11 CIV. 9645 (RJS), 2016 WL 5793398, at *19 (S.D.N.Y. Sept. 30, 2016) ("the triggering act for the running of the limitations period [for FCPA claims], *i.e.*, the act that would give the SEC a complete and present cause of action, would appear to be the 'use of the mails,' not the payment or offer of payment of the bribe itself.") (citation omitted).  There is no suggestion in *Gabelli* or Section 2462 (or *Kokesh*, for that matter) that the same conduct by a defendant can give rise to multiple accrual dates.

For all of the above reasons, as well as the reasons set forth in Baros's opening brief, all of the SEC's monetary claims against Baros should be dismissed as time-barred.

**II.    The SEC Has Failed to Establish a Basis for Subjecting Baros to Personal Jurisdiction in the U.S.**

As set forth in Baros's opening brief, the Amended Complaint fails to allege a basis for jurisdiction because it does not identify a single suit-related action by Baros that occurred inside the U.S., was purposefully directed at the U.S., or was expressly intended to cause harm within the U.S.

The SEC's brief initially attempts to address these shortcomings by offering a laundry list of purported contacts between Baros and the U.S.  But all of these are either impermissibly vague and conclusory or relate to contacts between *other parties* and the U.S.  Courts have repeatedly ruled that such indirect contacts cannot support personal jurisdiction, which must be based on the defendant's own contacts with the forum.

The SEC's brief also attempts to find contacts related to each of the claims.  But with respect to the FCPA anti-bribery claims, the SEC fails to allege that Baros played a direct role in bribe payments or engaged in any suit-related conduct that was purposefully directed toward the U.S.  With respect to the FCPA accounting and controls claims, the SEC has failed to allege any actions by Baros that would have a sufficiently direct impact on the books, records, or controls of a U.S. issuer; the only books and records that Baros had any involvement with were maintained by foreign entities, often several steps removed from Och-Ziff, the issuer.  And with respect to the IAA claims, the only suit-related conduct alleged in the Amended Complaint involved foreign investors and had only an indirect, and at most an attenuated, impact on the U.S.

**A.    The SEC Has Not Adequately Alleged a Single Suit-Related Contact Between Baros and the U.S., and It Cannot Fill the Gap by Relying on Och-Ziff's Connection to the Forum.**

To establish personal jurisdiction, the SEC must allege (*i*) that Baros "purposefully directed" his activities at residents of the forum, and (*ii*) that "the litigation results from alleged

injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The relevant contacts are those that "the defendant *himself* creates with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). If the defendant's suit-related conduct "occurs entirely out-of-forum" but is alleged to have "in-forum effects," jurisdiction is proper only "if the defendant expressly aimed its conduct at the forum." *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013) (citation omitted).

The SEC's argument departs from these basic rules of jurisdiction from the outset. It begins with a lengthy summary of allegations that the SEC characterizes as a catalogue of "extensive, pervasive and consistent contacts" between Baros and the U.S. SEC Mem. at 70-71. None of these allegations describe actions that (*i*) were undertaken by Baros himself, (*ii*) were suit-related, and (*iii*) occurred inside the U.S. or were purposefully directed to the U.S.

Instead of detailing Baros's suit-related contacts with the U.S., the SEC focuses on Baros's relationship with *Och-Ziff*, a U.S. entity. For example, the SEC repeatedly asserts that Baros worked "at the direction and subject to control" of Och-Ziff personnel "in New York," or that Och-Ziff "held Baros out as 'Och-Ziff Personnel.'" SEC Mem. at 70-72, 76-77, 86. These allegations illustrate a central – and legally deficient – premise of the SEC's jurisdiction theory: that Baros's contacts with the U.S. arose "through . . . his contacts with" Och-Ziff and OZ Management. SEC Mem. at 77. This approach turns the minimum contacts standard on its head. Personal jurisdiction must be based on contacts between "the defendant . . . and the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122. Even if Baros had been an agent or employee of Och-Ziff (which he was not), "a principal's conduct may not supply the jurisdictional basis for an agent," *Complaint of Kreta Shipping, S.A.*, No. 96 cv. 1137 (KMW), 1998 WL 173167, at *8 (S.D.N.Y. Jan. 29, 1998), and "[an

employee's] contacts . . . are not to be judged according to [his] employer's activities." *Calder v. Jones*, 465 U.S. 783, 790 (1984). This is not a criminal conspiracy case where third-party contacts might be relevant. Thus, allegations regarding Baros's relationship with Och-Ziff cannot substitute for concrete, fact-specific allegations showing "contacts that [Baros] *himself* create[d] with the forum." *Walden*, 134 S. Ct. at 1122 (emphasis in original).[4]

Lacking any plausible argument for jurisdiction, the SEC seizes upon the Supreme Court's statement that jurisdiction cannot be based solely on a defendant's "random, fortuitous, or attenuated contacts" with the forum. SEC Mem. at 75 (*quoting Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1980)). This does not mean, as the SEC implies, that jurisdiction *must* exist as long as the defendant's contacts with the forum are *not* "random, fortuitous, or attenuated." *See, e.g.,* SEC Mem. at 75, 77, 78. Of course, more is required.[5]

At bottom, the Amended Complaint simply fails to allege any cognizable contacts between Baros and the forum. The only allegations that describe any direct contact between Baros and the U.S. – for example, allegations regarding communications with Och-Ziff personnel in New York and travel to the U.S., *see* Am. Compl. ¶¶ 14-16, 18 – are plainly too conclusory to bear any weight in the jurisdictional analysis. *See* Baros Mem. at 30.[6] The only

---

[4] The same flaw undercuts the many allegations that relate to "Cohen and Baros" collectively, without identifying Baros's own conduct. *See* Baros Mem. at 31; *infra* at Section II.B.

[5] Further, *Keeton* itself forecloses the SEC's argument that Baros's alleged contacts with Och-Ziff and OZ Management automatically constitute contacts with the U.S. *See Keeton*, 465 U.S. at 781 n.13 ("jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him").

[6] *See also Grow Group, Inc. v. Jandernoa*, No. 94 cv 5679 (RPP), 1996 WL 31848, at *5 (S.D.N.Y. Jan. 26, 1996) (conclusory allegations that defendants were responsible for communications with forum were insufficient); *Anderson v. Griswold Int'l, LLC*, No. 14 cv 2560 (EDL), 2014 WL 12694138, at *3 (N.D. Cal. Dec. 26, 2014) (general allegations of emails and meetings in the forum, without supporting detail, were insufficient); *Arensdorf v. Everson*, No. 07 cv 2703, 2008 WL 2229745 (S.D. Tex. May 27, 2008) (allegation that defendant employees, "within the scope of their responsibilities . . . had numerous contacts with the forum state through the internet, mail, phone system, property leases, web sites" were inadequate); *see also Laydon v. Mizuho Bank, Ltd.*, No. 12 CIV. 3419 GBD, 2015 WL 1515358, at *3 (S.D.N.Y. Mar. 31, 2015) ("Communications that passed through and/or were stored within the United States are insufficient to assert personal jurisdiction over a defendant.").

specifically identified communications that involved the U.S. did not involve Baros; and the only alleged communications that did involve Baros did not involve the U.S. *See* Am. Compl. ¶¶ 90-92, 157-58, 170, 172, 176. The allegation that Baros "directly marketed AGC II to U.S. prospective investors during meetings in the United States," Am. Compl. ¶ 164, also lacks sufficient detail, including any indication that the meetings were suit-related. *See* Baros Mem. at 29.

The SEC relies heavily on allegations that Baros knew that funding for the transactions at issue originated in or was transferred through New York. *See, e.g.*, SEC Mem. at 90 (citing Am. Compl. ¶ 16). But these, too, are insufficient. The Amended Complaint does not allege that Baros controlled the source of funds, that he personally authorized or caused funds to be paid from New York, or even that he had the authority to do so. *Cf. SEC v. Sharef*, 924 F. Supp. 2d 539, 546 n.63 (S.D.N.Y. 2013) (allegation that defendant played a role in bribes that "were deposited in a New York bank" did not establish jurisdiction where defendant himself "did not direct that the funds be routed through a New York bank"); *cf. Asahi Metal Indus. Co. v. Superior Ct. of Calif.*, 480 U.S. 102, 112-13 (1987) (no jurisdiction based on distribution of goods in U.S. where defendant "did not create, control, or employ the distribution system that brought its valves to California").[7]

Finally, the SEC suggests that Baros is subject to jurisdiction because his actions outside the U.S. had "effects" in the U.S. Under the "effects test," a defendant whose conduct takes place entirely outside the forum but allegedly has "in-forum effects" can be subjected to jurisdiction only

---

[7] The SEC suggests that *Licci* supports basing jurisdiction on the alleged use of U.S. bank accounts. But *Licci* illustrates precisely why the SEC's argument fails. In that case, the Second Circuit upheld jurisdiction over foreign banks that wired funds for terrorist operations through New York bank accounts. Jurisdiction arose from the fact that the correspondent banking accounts in New York were opened and controlled *by the defendants themselves*, and the use of those accounts was the very wrong alleged. 732 F.3d at 165-66. *See also* SEC Mem. at 79 n.50 (attempting to distinguish *Sharef* by pointing to cases in which the defendants personally used U.S. bank accounts). The Amended Complaint does not suggest that Baros controlled any U.S. accounts or link him to any particular banking transactions in the U.S. (or anywhere else).

"if the defendant expressly aimed its conduct at the forum." *Licci*, 732 F.3d at 173 (citation

omitted); *see also Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 337-40 (2d Cir. 2016).

This standard is clearly the correct one, since Baros is not alleged to have engaged in any suit-

related conduct inside the U.S. But the SEC wrongly states that the standard permits jurisdiction if

the defendant "knows or has good reason to know" that his actions will have effects in the forum.

SEC Mem. at 74. This is simply untrue. "The fact that harm in the forum is foreseeable . . . is

insufficient" to establish jurisdiction; indeed, even if the defendant *knows* that its actions will have

in-forum effects, jurisdiction is absent unless the defendant "expressly aimed its conduct" at the

forum and the forum was "the focal point" or "nucleus" of the alleged harm. *Waldman*, 835 F.3d

at 337-40. As discussed below, the Amended Complaint does not allege any conduct by Baros, or

any "in-forum" effects of such conduct, that meet this standard.

> **B.**     **The SEC Fails to Plead a Basis for Jurisdiction as to Its Anti-Bribery Claims.**

In its brief, the SEC tries to rescue its FCPA anti-bribery claims by (*i*) attempting to

distinguish cases in which courts found jurisdiction lacking under similar circumstances, and

(*ii*) reiterating lengthy portions of the Amended Complaint that were, and remain, inadequate.

Neither approach has merit.

The SEC first trains its fire on *SEC v. Sharef*. The defendant in *Sharef* was a foreign

national who, acting outside the U.S., negotiated bribe payments to Argentine officials, which

others at the company covered up by signing false financial certifications. 924 F. Supp. 2d at 542-

43. The court dismissed for lack of jurisdiction because the defendant did not personally authorize

bribes and also did not falsify financial statements. *Id.* at 546-49. The SEC argues that *Sharef* is

distinguishable because it involved fewer contacts with the U.S. than are attributed to Baros in this

case. But the opposite is true. The defendant in *Sharef* personally negotiated bribes on behalf of

his employer, a wholly-owned subsidiary of a U.S. issuer; urged his superiors to make the

payments; participated in at least two specific bribe-related phone calls with the U.S.; and portions

of the bribes were deposited in U.S. bank accounts. *Id.* at 542-43, 546, n.30, n.36, n.63. In

contrast, Baros is not alleged to have played any direct role in arranging or authorizing bribes, and

the SEC has not identified a single suit-related communication between Baros and the U.S., or

linked him to any specific wire transfers or other uses of a U.S. account. *See* Baros Mem. 20-23.[8]

    *Sharef*, *Straub*, and a long line of similar decisions discussed in Baros's opening brief

(but ignored by the SEC) illustrate the basic rule that personal jurisdiction requires fact-specific

allegations that the defendant played an active part in suit-related conduct that took place in, or

was purposefully directed to, the U.S. Baros Mem. at 20-23. *See generally, Waldman*, 835 F.3d

at 335 (specific jurisdiction arises only when "the defendant's suit-related conduct . . . create[s] a

substantial connection with the forum State").

    The remainder of the SEC's argument regarding the anti-bribery claims merely recites –

and often embellishes and misstates – portions of the Amended Complaint without addressing its

shortcomings. For example, Baros's actions are typically alleged in vague terms – such as that

Baros "supported" certain transactions – without concrete detail. *See* SEC Mem. at 85. Further,

most of the relevant allegations relate to "Cohen and Baros," without differentiating between the

two or specifying "contacts that [Baros] *himself* create[d] with the forum." *Walden,* 134 S. Ct. at

1122 (emphasis in original); *see Laydon*, 2015 WL 1515358, at *4 (a plaintiff must allege

jurisdiction "as to each defendant separately."). Unable to defend these allegations, the SEC

---

[8] The SEC also misreads *Straub*, another FCPA case involving foreign conduct, although *Straub* held that the SEC
established jurisdiction. According to the SEC, jurisdiction in *Straub* was based solely on the defendants' direct role
in false SEC filings as part of a cover-up for bribe payments. SEC Mem. at 79-80. Again, this is incorrect. The
defendants in *Straub* personally "orchestrated" bribe payments, and also personally signed false SEC filings.
*Straub*, 921 F. Supp. 2d at 244-51. In *Sharef*, decided shortly after *Straub*, Judge Scheindlin distinguished the two
cases by noting that the *Straub* defendants "orchestrated a bribery scheme . . . *and* as part of the bribery scheme
signed off on misleading management representations . . . and signed false SEC filings." 924 F. Supp. 2d at 547; *see
also SEC v. Straub*, No. 11 CIV. 9645 RJS, 2013 WL 4399042, at *3 (S.D.N.Y. Aug. 5, 2013) ("*Straub II*") (quoting
with approval the distinction drawn by Judge Scheindlin).

ignores the problem, and in some instances tries to hide it by using "Baros" alone where the Amended Complaint uses "Cohen and Baros." *Compare* SEC Mem. at 82-84 *with* Am. Compl. ¶¶ 105-27. In fact, the SEC's brief routinely overstates or distorts what is actually alleged in the Amended Complaint. For example, the SEC states in its brief (without citation) that "Baros arranged for Och-Ziff to get into a financial bed with" Agent 3. SEC Mem. at 84. But the Amended Complaint actually alleges that the decision to do business with Agent 3 was made by Och-Ziff Employee 1, who overruled the concerns of "senior legal and compliance officers." Am. Compl. ¶ 111.

In short, the Amended Complaint fails to plead jurisdiction as to the anti-bribery claims: at the very most, Baros is alleged to have been aware of bribes and to have played a role in the underlying transactions, but there is no allegation that he negotiated, arranged, or approved bribe payments, or engaged in any conduct that was purposefully directed at the U.S.

**C.     The SEC Fails to Plead a Basis for Jurisdiction as to Its Accounting and Controls Claims.**

The SEC also fails to salvage its FCPA accounting and internal controls claims. To establish minimum contacts in connection with these claims, the SEC must allege, concretely, that Baros played a sufficiently direct role in falsifying accounting documents and circumventing the controls *of a U.S. issuer*. *See, e.g.*, *Sharef*, 924 F. Supp. 2d at 544-48 (finding no personal jurisdiction where SEC did not allege that defendant "sign[ed] or directly manipulat[ed] financial statements" or otherwise "played any role" in alleged violations); *see* 15 U.S.C. § 78m(b)(2)(A) (requiring "issuer[s]" to keep accurate books and records); *id.* § 78m(b)(5) (making it unlawful to circumvent controls or "knowingly falsify any book, record, or account" of an issuer).

The SEC claims it has satisfied this standard, pointing to allegations that Baros was aware of bribe payments but failed to disclose that information, despite knowing that this would

ultimately result in inaccuracies in Och-Ziff's books and records, and that he was responsible for the books and records of offshore third parties such as AGC II. SEC Mem. at 88. But these allegations are too conclusory to support the SEC's theory. *See* Baros Mem. at 25; *see e.g., In re Braskem S.A. Sec. Litig.*, No. 15 CIV. 5132 (PAE), 2017 WL 1216592 (S.D.N.Y. Mar. 30, 2017), at *26-27 ("a conclusory statement that a foreign defendant caused an issuer to mak[e] false and misleading filings" by failing to disclose bribes "is not enough to support personal jurisdiction"). Critically, there are no allegations that Baros played any role in falsifying or causing inaccuracies in the books and records of Och-Ziff or any other U.S. issuer.

As detailed in Baros's opening brief, courts routinely dismiss cases for analogous reasons in closely similar contexts. *See* Baros Mem. at 20-23 (citing cases). The SEC argues that these authorities are inapplicable because the "primary, or even sole, alleged basis for minimum contacts" in those cases was direct personal involvement in falsified financial statements.[9] SEC Mem. at 88. The SEC has it backward. Jurisdiction was absent in those cases because, like Baros, the defendants were *not* directly involved in fraudulent U.S. financial statements, not because such alleged involvement was their sole U.S. contact.[10] *See* Baros Mem. at 20-23. The same is true of Baros, and the Amended Complaint should be dismissed for the same reason.

The few allegations in the Amended Complaint that go beyond vague assertions that Baros knew but failed to disclose certain information fall far short of establishing jurisdiction as a matter of law. For example, the Amended Complaint alleges that Baros failed to follow up on an email

---

[9] Other than *Sharef*, the SEC addresses only one of the cases cited in Baros's opening brief, and its argument entirely misses the point of that decision. *See* SEC Mem. at 77, 88. *In re AstraZeneca Securities Litigation* held that a plaintiff cannot establish jurisdiction over a foreign defendant by grouping the defendant together with others and alleging generally that the defendant impacted U.S. financial statements. 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008). Here, the vast bulk of the SEC's allegations relate to "Cohen and Baros" rather than Baros individually. The SEC cannot and does not defend the sufficiency of such allegations.

[10] In any event, as discussed, the defendant in *Sharef* had *more* ties to the U.S. than Baros, yet jurisdiction was still lacking.

referring to "consultancy fees," but the email was from an unidentified "Och-Ziff employee" in an unspecified location, and referred to "consultancy fees" paid from a third party (South African Business Associate 3) to another third party (Agent 2). Am. Compl. ¶ 96. The SEC also alleges that Baros was responsible for inaccuracies in an audit report, but the report reviewed the records of entities owned by Agent 3 (not by Och-Ziff or any other U.S. issuer) relating to foreign transactions which did not directly involve Och-Ziff. *Id.* ¶¶ 142-44; Baros Mem. at 27.[11] Such allegations fail to demonstrate that Baros "expressly aimed [his] conduct" at the U.S., such that the forum was "the focal point" or "nucleus" of the alleged harm. *Waldman*, 835 F.3d at 337, 339-40. In brief, the SEC has not shown "what . . . constitutionally sufficient connection . . . the commission of *these* [actions] by *th[is]* defendant[] ha[d] to *this* jurisdiction." *Id.* at 336 (emphasis in original).[12]

### D. The SEC Fails to Plead a Basis for Jurisdiction as to the IAA Claims.

The SEC's brief also fails to articulate a plausible basis for the exercise of personal jurisdiction over Baros in relation to the IAA claims. The SEC first asserts that Baros "acted within the United States as an affiliated employee of" OZ Management, a domestic investment adviser. SEC Mem. at 89, 91. But Baros's employment status or regulatory categorization is

---

[11] The SEC also claims that Baros "was subject to" Och-Ziff's Code of Ethics and signed annual certifications of compliance, and "subject to oversight by Och-Ziff's legal and compliance personnel in both London and New York." SEC Mem. at 89; Am. Compl. ¶ 18. But the SEC never alleges that any of its claims arose out of that conduct, that the transactions at issue violated the Code of Ethics, or that the "express inten[t]" of Baros's conduct was aimed at Och Ziff's Code of Ethics.

[12] *See, e.g.*, *In re Platinum & Palladium Antitrust Litig.*, No. 1:14-CV-9391-GHW, 2017 WL 1169626, at *44-46 (S.D.N.Y. Mar. 28, 2017) (holding that jurisdiction was lacking despite allegations that defendant's employees participated in emails and calls (which passed through the U.S.) to coordinate price manipulation, that corporation held memberships on U.S. commodities exchanges, and that price manipulation foreseeably caused harm in the U.S., in the absence of allegations that defendant "expressly aimed its conduct at the U.S." by manipulating prices on U.S. exchanges); *id.* at 45 (same result, despite allegations that defendant's sole function was to facilitate price fixing, and that defendant's conduct "was targeted and had substantial . . . effects" on U.S. prices); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 354 (D. Md. 2004) (finding no jurisdiction where foreign defendant made false financial attestations that allowed U.S. issuer to "artificially inflate the revenue" in documents incorporated in SEC filings, because "[defendant's] allegedly fraudulent acts were directed towards the Netherlands, and globally, but not specifically towards the U.S.").

irrelevant to the jurisdictional analysis.  *See, e.g., Calder*, 465 U.S. at 790 ("[Employees']

contacts ... are not to be judged according to their employer's activities" in the forum state); *In re*

*Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 454 (S.D.N.Y. 2005) (a defendant's status as statutory

"control person" does not establish personal jurisdiction).  Similarly, the SEC claims that it has

alleged "domestic conduct" by Baros in relation to the AGC II transactions.  SEC Mem. at 90

(*citing* Am. Compl. ¶¶ 14-16).  But the SEC has not alleged any "domestic conduct" by Baros.

*See supra* at Section II.A.

The SEC also contends that Baros engaged in conduct that was "aimed or directed at the

United States."  SEC Mem. at 91.  In support, the SEC points to a series of alleged

misrepresentations directed at "the *UK* investor."  *Id.* (emphasis added) (citing Am. Compl. ¶¶

159, 178-79).  These actions do not amount to jurisdictional contacts with the *U.S.*, even if they

ultimately impacted the U.S. (a point on which the SEC's explanation is unclear at best).

Finally, the SEC notes that Baros allegedly "fail[ed] to communicate complete and accurate

information about the [2011 Stock Transaction] to Och-Ziff."  *Id.*  But the SEC supports this

statement only with allegations regarding Och-Ziff's books and records that have no clear nexus

to the IAA claims.  *Id.* (citing Am. Compl. ¶ 180).

### E.  The Exercise of Personal Jurisdiction Would Be Unreasonable.

The SEC argues that the exercise of jurisdiction over Baros would be reasonable because

(*i*) the U.S. has a compelling interest in enforcing the securities laws, and (*ii*) the SEC has no

alternative forum for pursuing Baros.  SEC Mem. at 92-93.  However, the SEC ignores other factors

in the reasonableness analysis, including the significant burden that would be imposed on Baros by

extensive litigation in the U.S.  *See* Baros Mem. at 32-33 (citing cases).  In addition, the SEC has

already materially vindicated its enforcement interests by reaching a substantial settlement with Och-

Ziff and others relating to the same events. *Id.*; *cf. Sharef*, 924 F. Supp. 2d at 548-49 (weighing SEC and DOJ settlement against foreign defendant's employer in reasonableness analysis).

## III. The SEC Overreached In Charging Baros with Anti-Bribery Claims, and Those Claims Should Be Dismissed.

### A. The SEC's Arguments that Baros Was an Agent and Employee Are Conclusory and Inconsistent with Settled Law.

The SEC claims that Baros is subject to direct FCPA liability under Section 78dd-1, which prohibits "any officer, director, *employee, or agent* of [an] issuer" from using the mails or instrumentalities of interstate commerce to further a corrupt payment. 15 U.S.C. § 78dd-1 (emphasis added). Baros plainly was not an officer or director of the issuer, Och-Ziff. The SEC, therefore, is left to claim that Baros was somehow an agent or employee of the issuer, but its effort to do so is conclusory as a matter of pleading and wrong under the law.

As an initial matter, despite obfuscating the issue, the SEC does not dispute that Baros was employed by OZ Europe; that he worked out of OZ Europe's London office; and that he was directly supervised by Cohen in the London office, not by any Och-Ziff executives or personnel in New York. Indeed, the SEC concedes that the Amended Complaint fails to identify a *single interaction* between Baros and Och Ziff's New York personnel on any of the transactions at issue (let alone any interaction suggestive of an agency relationship). *See* SEC Mem. at 61 n.35; *see also* Baros Mem. at 36-38. Notwithstanding this concession, the SEC blithely – and wrongly – suggests that the Court should not bother engaging in "[a] formal agency analysis." *Id.* at 61.

### 1. Baros Was Not an Agent of Och-Ziff.

In support of its agency theory, the SEC's brief sets forth a lengthy series of bullet points (21 in total), most of which merely summarize generic, conclusory allegations from the Amended Complaint—*e.g.*, that Och-Ziff "wholly owned and controlled" Baros's employer, OZ Europe, that Och-Ziff "manages its global work force from its headquarters in New York," or

that Baros "acted as agent of Och-Ziff through his employment, duties, and responsibilities at [OZ Europe]." SEC Mem. at 59-60, 62-63. There is no allegation that OZ Europe was undercapitalized or failed to observe corporate formalities, such as maintaining separate books and records and financial statements. Thus, the allegations in the Amended Complaint portray a typical hedge fund structure with clearly drawn corporate lines. *See, e.g.*, *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 547 (S.D.N.Y. 2008) (concluding that allegations that parent entity "controlled Amaranth Advisors [and] employed the natural gas traders" were "[i]n no sense . . . sufficient to allege a principal-agent relationship" among family of Amaranth hedge funds). The SEC also suggests that dismissal on agency grounds is premature, SEC Mem. at 64, but courts regularly dismiss claims at the pleading stage based on factual allegations analogous to the ones here.[13]

In the few instances in which the SEC elaborates on its agency theory, it makes assertions that run contrary to well-established agency principles. First, the SEC suggests that Och-Ziff's consolidation of its subsidiaries' financial results into its financial statements demonstrates an agency relationship, SEC Mem. at 61, even though this position has regularly been rejected by courts. *See, e.g.*, *Khatib v. Alliance Bankshares Corp.*, 846 F. Supp. 2d 18, 32-33 (D.D.C. 2012) ("[I]t is widely acknowledged that consolidating the activities of a subsidiary into the parent's reports is a common business practice, and courts routinely find that such collective descriptions are insufficient to impute the contacts of a subsidiary to its corporate parent." (citation and internal

---

[13] *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig., Comm. Fut.*, No. 11 MDL 2262, 2015 WL 6696407, at *20-21 (S.D.N.Y. Nov. 3, 2015) (granting motion to dismiss despite allegations that "[the parent] controlled [the subsidiary] to a considerable degree and [the subsidiary] could conceivably have acted as [the parent's] agent for some purposes"); *Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329(DC), 2008 WL 5110919, at *2, *6 (S.D.N.Y. Nov. 26, 2008) (granting motion to dismiss despite allegations that "a common manual dictated auditing practice [and] a compliance team set up by [the principal] reviewed" the alleged agent); *Maung Ng We v. Merrill Lynch & Co., Inc.*, No. 99 CIV. 9687(CSH), 2000 WL 1159835, at *5 (S.D.N.Y. Aug. 15, 2000) (granting motion to dismiss and noting that "[p]laintiffs must do more than state the legal conclusion that [the purported agent] was the defendants' agent, it must plead facts that support a finding that such agency existed").

quotations omitted)); *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001) ("The fact that Ocwen has consolidated its annual report with the Ocwen Bank, however, is not a sufficient basis to show that the Ocwen Bank is a mere department of the defendant.").

Second, the SEC claims that a Private Placement Memorandum demonstrates an agency relationship between Och-Ziff and Baros because the document purportedly held Baros out as "'Och-Ziff Personnel' and a member of the 'Och-Ziff organization'" and "[gave] no hints that [Baros] was employed by any entity *other* than Och-Ziff."  SEC Mem. at 63-64 n.38 (emphasis in original).  That the Private Placement Memorandum—a marketing document intended for distribution to sophisticated potential investors—describes Och-Ziff and its affiliates in collective fashion is reflective of a common marketing practice, not evidence of an agency relationship.[14]  *See J.L.B. Equities, Inc.*, 131 F. Supp. 2d at 550 ("[T]he Court is not persuaded that a failure to distinguish between parent and subsidiary on a web page is sufficient to show that the parent controls the subsidiary's marketing and operational policies."); *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 163 (E.D.N.Y. 2006) (listing a subsidiary as a "USA Partner" of a foreign parent "do[es] not inform the Court about the relationship between the two entities and [is] insufficient to raise an inference of agency").

Third, the SEC suggests that Baros was an agent of Och-Ziff because he "work[ed] hand-in-hand" with Cohen, who was on Och-Ziff's management committee and an executive officer of OZ Management, SEC Mem. at 60, 62, 63, but the SEC conveniently glosses over the fact that Cohen also served as a director of OZ Europe during the relevant time period[15] and was in

---

[14] The SEC's suggestion that the Private Placement Memorandum is suggestive of apparent agency, SEC Mem. at 63-64, is also wrong.  Apparent authority exists only when "a third party *reasonably believes* the actor has authority to act on behalf of the principal," Restatement (Third) of Agency § 2.03 (2006) (emphasis added), which no sophisticated investor could believe with respect to Baros under these circumstances.

[15] *See* 2009 Och-Ziff 10-K at 16, available at
https://www.sec.gov/Archives/edgar/data/1403256/000119312509052250/d10k.htm.

charge of that entity. *See* Am. Compl. ¶ 17. The SEC's theory of agency fails, therefore, because it ignores the "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998). Here, the Amended Complaint offers no facts to suggest that Cohen was somehow wearing his "parent hat" when he supervised Baros. *See id.* at 69 (courts generally presume that dual directors or officers "are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary"); *Fried v. LVI Servs., Inc.*, No. 10 CIV. 9308 JSR, 2011 WL 2119748, at *5 (S.D.N.Y. May 23, 2011) (granting motion to dismiss where complaint did not allege facts "to rebut the presumption that directors with affiliations to more than one corporation 'change hats' . . . to fulfill their obligations to each entity").

Fourth, and finally, the SEC suggests that an agency relationship exists because "the alleged bribes could not have been paid without approval for funding from Och-Ziff personnel in New York." [16] SEC Mem. at 63 n.37. But the SEC must go further than alleging a nexus between Och-Ziff and OZ Europe: it must take the additional step of identifying conduct or statements that demonstrate that Och-Ziff *directly* exercised control over *Baros's* performance and duties. *See* Restatement (Third) Of Agency § 1.01 ("A corporation's agents are . . . not the agents of other affiliated corporations unless, *separately*, an agency relation has been created between the agents and the affiliated corporation." (emphasis added)). Moreover, the SEC must

---

[16] The SEC relies on *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983), but that case did not even discuss agency principles. Instead, *Bonnette* concluded that the appellants were "employers" under the Fair Labor Standards Act because they, in contrast to Och-Ziff, "exercised considerable control over the *structure and conditions of employment*" and determined "the number of hours each chore worker would work and exactly what tasks would be performed." *Id.* at 1470 (emphasis added). In addition, *Bonnette* is also irrelevant to the question of whether Baros qualifies as an "employee" under the FCPA, because "the factors [in *Bonnette*] concern whether a joint employment relationship exists, *not whether an individual is an employee in the first place*." *Saini v. Motion Recruitment Partners, LLC*, 2017 WL 1536276, at *5 n.8 (C.D. Cal. Mar. 6, 2017) (emphasis added). Under the standards that do apply, the SEC has failed to allege an employee-employer relationship between Och-Ziff and Baros. *See* Part III.A.2, *infra*.

do more than claim that Baros was an agent of Och-Ziff in a general sense; it must specifically allege that Baros's actions on each of the four transactions were within the scope of the supposed agency. *Cf. id.* ("Only interactions that are within the scope of an agency relationship affect the principal's legal position"). The SEC has failed to do so here.

### 2. Baros Was Not an Employee of Och-Ziff.

The SEC's claim that Baros was an "employee" of Och-Ziff suffers from similar deficiencies. As the SEC well knows from its extensive pre-filing investigation, Baros was employed by OZ Europe, not by its corporate parent. Neither the Amended Complaint nor the SEC's lengthy detour through legislative history and regulatory filings, *see* SEC Mem. at 64-65, can alter this basic fact.

To determine whether Och-Ziff and OZ Europe should be deemed a single employer, "control of labor relations is the central concern." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). The relevant factors of such control include "whether the subsidiary has a separate human resources department, [and] whether the subsidiary establishes its own policies and makes it[s] own decisions as to hiring, discipline, and termination of its employees." *Duncan v. Am. Int'l Grp., Inc.*, No. 01 Civ. 9269(AGS), 2002 WL 31873465, at *3 (S.D.N.Y. Dec. 23, 2002). The SEC's failure to allege that Och-Ziff had any control or involvement in OZ Europe's day-to-day labor, employment, and human resource matters is therefore fatal to its claim.

The SEC attempts to salvage its theory by relying on the collective references in Och-Ziff's 10-K to "Och-Ziff" and "our Company," SEC Mem. at 67—but cites no legal authority to suggest that this bears any relevance to the single employer doctrine. Indeed, such descriptions are nothing more than common business practice, and, therefore, irrelevant to the inquiry. *See, e.g.*, *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459-60 (2d Cir. 1995) (finding that references to subsidiary as a "division" of Kodak did not show that the companies operated as a "single

economic entity"); *Khatib*, 846 F. Supp. 2d at 33 (rejecting argument that references in 10-K to parent and subsidiary "in collective terms . . . provide a basis for inferring that the two entities essentially operate as a single enterprise").[17]

The SEC also relies on Och-Ziff's deferred prosecution agreement with the Department of Justice ("DPA"). SEC Mem. at 68. But nothing in the DPA states or suggests that Och-Ziff had any control over labor matters at OZ Europe.

Finally, the SEC cites *Tcherepnin v. Knight*, 389 U.S. 332 (1967), a non-FCPA case, to argue that the Court should not engage in a "hyper-technical definition of 'employee'" as that term is used in the FCPA. SEC Mem. at 65. But the SEC cannot make an end run around Congress's deliberate decision to exclude from the scope of the FCPA foreign nationals, who, like Baros (1) do not act within the territory of the U.S., and (2) are not officers, directors, employees or agents of a U.S. issuer. *See United States v. Hoskins*, 123 F. Supp. 3d 316, 322-23 (D. Conn. 2015) ("[T]he text and structure of the FCPA provide strong indication that Congress did not intend for non-resident foreign nationals to be subject to the FCPA unless they were agents of a domestic concern or acted in the territory of the United States . . . .").

### 3. Baros Is Not Subject to Aiding and Abetting Liability under the FCPA.

Because the SEC has failed to plead that Baros was an agent or employee of Och-Ziff, its aiding and abetting claim against Baros (Claim Two) should also be dismissed for the reasons set forth in *Hoskins*. The SEC's unsupported assertion that *Hoskins* is not binding because it "arose in a criminal case," SEC Mem. at 69, is wrong. As the Second Circuit has stated, "[i]n assessing [aiding and abetting under the Securities and Exchange Act], we draw guidance from the well-

---

[17] The SEC's opposition brief misleadingly claims that "[OZ Europe] is not even mentioned in Och-Ziff's annual report." SEC Mem. at 68. Yet the 2009 10-K *cited by the SEC* makes reference to OZ Europe as an "indirect foreign operating subsidiar[y]," and confirms that Cohen served as "a director of [OZ Europe]" during the relevant period. *See* 2009 10-K at 16.

developed law of aiding and abetting liability in criminal cases." *SEC v. Apuzzo*, 689 F.3d 204, 211-12 (2d Cir. 2012).

## B. The SEC's FCPA Claims Fail to Meet Basic Pleading Standards with Respect to the Margin Loan and the 2011 Stock Purchase.

With respect to the Margin Loan and the 2011 Stock Purchase, the SEC has not met the pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

### 1. The SEC Has Failed To Connect Baros to the Margin Loan.

As an initial matter, the SEC in its brief points to nothing in the Amended Complaint showing that Baros even worked on the Margin Loan. The SEC's brief impliedly concedes this fact, noting that it was Cohen who continued to work with Agent 3 after the $124 Million Convertible Loan and Cohen who agreed to arrange for Och-Ziff to provide Agent 3 with more loan money. SEC Mem. at 94. While the SEC states that Baros took actions in furtherance of a bribery scheme in general, *id.* at 93, the SEC does not point to a *single act* that Baros took in connection with the Margin Loan in particular. Indeed, the Amended Complaint makes clear that a different Och-Ziff employee assisted Cohen with the loan. *See* Am. Compl. ¶ 147.

The SEC fares no better in pleading that Baros knew of bribery in connection with the Margin Loan. The SEC tries to argue that Baros knew that Agent 3 had planned or paid bribes connected with *other* transactions with other parties, and therefore that Baros must have known that Agent 3 would pay bribes with Margin Loan funds. *See* SEC Mem. at 94, Am. Compl. ¶¶ 130, 147. But such conclusory allegations, devoid of facts relating to the specific transaction, cannot withstand a motion to dismiss. *See Iqbal*, 556 U.S. at 680-81 ("bare assertions [of defendants' knowledge] . . . are conclusory and not entitled to be assumed true").

The SEC's brief also introduces a fact that is not alleged in its pleading: that an associate

23

of Agent 3 told Baros that Agent 3 planned to use the Margin Loan funds to pay bribes.  SEC

Mem. at 95.[18]  However, the SEC "may not amend [its] complaint through motion papers, and

the Court [should] not consider th[ese] newly raised [allegations]."  *U.S. ex rel. Siegel v. Roche*

*Diagnostics, Corp.*, 988 F. Supp. 2d 341, 342-43 (E.D.N.Y. 2013).

**2.**     **The SEC Fails to Plead that Baros Played a Role in the Alleged Bribery in Guinea.**

The SEC also fails to rescue its FCPA claim against Baros in connection with South

African Business Associate 3's alleged bribery in Guinea using proceeds from a stock sale to

AGC II.  While Baros allegedly worked on the stock purchase transaction, he is not alleged to

have known that proceeds of the sale would be used to pay bribes in Guinea or to have done

anything to further these alleged payments.  Far from explaining how its pleading draws the

necessary connection, the SEC's brief merely rehashes the allegations in the Amended

Complaint by pointing to allegations that are relevant, if at all, to the SEC's IAA claims.  *See*

SEC Mem. at 95; Am. Compl. ¶¶ 167-72.

With respect Baros's lack of knowledge of corrupt payments in Guinea, the SEC merely

repeats that "Baros knew from his previous dealings with SABA3 that he had access to deals

through bribery . . . and that his practice was to pay bribes to facilitate deals."  SEC Mem. at 96.

But the factual allegation the SEC cites for support alleges that Cohen and other Och-Ziff

employees – <u>not</u> Baros – were aware that South African Business Partner 3 had access to deals

through bribery.  *See* Am. Compl. ¶ 94.  The only specific, non-conclusory allegation that Baros

---

[18] The only allegations in the Amended Complaint of conversations between Baros and an associate of Agent 3 relate to the $124 Convertible Loan (*see* Am. Compl. ¶ 127) and Agent 3's transaction with a "third-party mining company" (*see* Am. Compl. ¶ 147).  And all of these conversations are alleged to have occurred well before Agent 3 first asked Och-Ziff for the Margin Loan in November 2010.  *See* Am. Compl. 148.

knew that South African Business Partner 3 would use the proceeds from the sale of stock to

AGC II to pay bribes appears in the SEC's opposition brief, and must be disregarded.[19]

## IV.    Claims Six and Seven Should Be Dismissed.

Baros joins in the arguments made in the Reply Memorandum of Law in Further Support

of Defendant Michael L. Cohen's Motion To Dismiss the Amended Complaint that Claims Six

and Seven should be dismissed for all of the reasons set forth therein.

## CONCLUSION

For all of the foregoing reasons, and those set forth in his opening brief, Baros

respectfully requests that the Court dismiss the Amended Complaint with prejudice.


Dated:  August 18, 2017
         New York, New York


                                        **COHEN & GRESSER LLP**


                                 By:   */s/ Mark S. Cohen*
                                        Mark S. Cohen
                                        Jonathan S. Abernethy
                                        S. Gale Dick
                                        800 Third Avenue
                                        New York, NY 10022
                                        (212) 957-7600

                                        *Attorneys for Vanja Baros*

---

[19] The SEC argues that it did allege that Baros knew South African Business Partner 3 would use the proceeds of the stock sale to bribe officials in Guinea.  *See* SEC Mem. at 97, n.2 (*citing* Am. Compl. ¶ 6, that ("Cohen and Baros knew, held the firm belief, or operated under circumstances that made it substantially certain, that the South African business partner would" pay bribes).  This is another example of a formulaic and conclusory allegation that is not entitled to an assumption of truth on a motion to dismiss.  *See Iqbal*, 556 U.S. at 680-81.